IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Patrick L. Booker, | ) | Case No. 8:12-cv-01957-MGL-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| South Carolina Department of Corrections; | ) | |
| Sylvia Jones; Ann Sheppard; and Thierry | ) | |
| Nettles, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants' motion for summary judgment [Doc. 43]; Plaintiff's motion to expedite ruling [Doc. 65]; and Plaintiff's motion for leave to file a supplemental complaint [Doc. 68]. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

On or about June 22, 2012, Plaintiff, proceeding pro se, filed this action against Defendants South Carolina Department of Corrections ("SCDC"), Sylvia Jones ("Jones"), Ann Sheppard ("Sheppard"), and Thierry Nettles ("Nettles"; collectively, "Defendants") in the Court of Common Pleas for McCormick County, South Carolina. [Doc. 2-1 at 2.] On July 13, 2012, Defendants removed the action to this Court and contemporaneously filed an answer to the Complaint. [Docs. 2, 4.] On July 23, 2012, Defendants filed a supplement to their notice of removal to include an Amended Complaint filed by Plaintiff in state court. [Docs. 8, 8-2.] Defendants also filed an answer to the Amended Complaint. [Doc. 9.]

On August 13, 2012, Plaintiff filed a motion to remand the matter back to state court, arguing the Court could not exercise supplemental jurisdiction over his state law claims. [Doc. 19.] On September 6, 2012, Plaintiff filed a motion to amend/correct the Amended Complaint to delete paragraphs 9–22. [Doc. 27.] On September 12, 2012, the undersigned granted Plaintiff's motion to amend/correct the Amended Complaint, directed the Clerk of Court to re-file Plaintiff's motion as his Second Amended Complaint, and recommended that Plaintiff's motion to remand be granted with respect to the causes of action outlined in the Complaint at paragraphs 30–31 and in the Amended Complaint at paragraphs 1–8, but denied with respect to all remaining claims. [Docs. 30, 32.] On November 7, 2012, the Honorable Mary G. Lewis adopted the undersigned's recommendation and remanded the causes of action in the Complaint at paragraphs 30–31 and in the Amended Complaint at paragraphs 1–8. [Doc. 40.] Accordingly, the claims remaining before this Court are those outlined at paragraphs 1–29 and 32–50 of the Complaint.

On December 5, 2012, Defendants filed a motion for summary judgment on Plaintiff's remaining claims. [Doc. 43.] On December 6, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 44.] Plaintiff filed a response in opposition on January 7, 2013. [Doc. 46.] Defendants filed a reply on January 17, 2013 [Doc. 48], and Plaintiff filed a surreply on February 25, 2013 [Doc. 63]. On May 2, 2013, Plaintiff filed a request for ruling, which the Clerk of Court construed and filed as a motion to expedite ruling on

the motion for summary judgment.[1]  [Doc. 65.]  On July 25, 2013, Plaintiff filed a motion for leave to file a supplement complaint.  [Doc. 68.]  Defendants filed a response in opposition on the same day.  [Doc. 69.]  The motions are now ripe for review.

## BACKGROUND[2]

Plaintiff is an inmate of SCDC and is currently housed at Allendale Correctional Institution ("Allendale").[3]  [Doc. 66 (notice of change of address to Allendale).]  At all times relevant to the claims remaining in this action, Plaintiff was housed at Lieber Correctional Institution ("Lieber").  [*See* Doc. 2-1 ¶ A; Doc. 8-2 ¶ 1.]

### *The 809 Charge*

On November 8, 2010, while housed in SMU at Lieber, Plaintiff mailed a legal document to the Dorchester County Sheriff's Civil Process Division, but it was returned for lack of sufficient postage.  [Doc. 2-1 ¶ 1.]  On November 17, 2010, his mail was returned to him and had already been opened, and presumably read, outside his presence.  [*Id.* ¶ 2.]  Consequently, Plaintiff exercised his First Amendment right to free speech and spoke out about the unauthorized opening of his mail by filing a "Request to Staff Member" form with the Lieber mail room advising the mail room staff of Plaintiff's discovery of mail tampering and of his intent to pursue civil remedies and to seek criminal prosecution if the matter occurred again.  [*Id.* ¶ 3.]

---

[1]The Court recommends the motion to expedite ruling be FOUND AS MOOT.

[2]The following background, forming the basis of Plaintiff's claims, is a summary of Plaintiff's allegations contained in the Complaint, Docket Entry 2-1, with respect to the claims remaining in this action.

[3] At the time he filed this action, Plaintiff was housed at Broad River Correctional Institution.  [Doc. 2-1 ¶ A.]

On November 18, 2010, after receiving Plaintiff's Request to Staff Member form, Jones falsely accused Plaintiff of and charged Plaintiff with a level two 809 disciplinary offense—"Threatening to Inflict Harm on/Assaulting Employee." [*Id.* ¶ 4.] The matter was referred for disciplinary action [*id.* ¶¶ 6, 8], and Captain Brightharp, the shift supervisor, refused to forward a copy of the incident report to the mental health staff, despite Plaintiff's documented mental health issue [*id.* ¶ 5, 7]. After a disciplinary hearing on December 9, 2010, Plaintiff was found "not guilty" of the charge. [*Id.* ¶ 10.] During the pendency of the charge, Plaintiff experienced and suffered heightened anxiety and depression, fear, confusion, inconvenience, and trouble sleeping and eating. [*Id.* ¶ 11.] Plaintiff also alleges the charge and its referral for disciplinary action had a chilling effect upon Plaintiff's exercise of his right of free speech and expression, and that Jones, Captain Brightharp,[4] and Nettles were reckless and grossly negligent and retaliated against Plaintiff for exercising his First Amendment right by pursuing the "bogus" disciplinary charge. [*Id.* ¶¶ 11–13.]

### The 855 Charge

On March 29, 2011, Jones filed a another false incident report, charging Plaintiff with an 855 offense—"Conspiracy to Smuggle In Contraband"—based on the contents of a letter he sent to the Lieber mail room to be mailed to his mother. [*Id.* ¶ 14–15.] Sheppard, the supervisor in charge of reviewing the incident report, referred the matter for disciplinary action but refused to forward a copy of the incident report to the mental health staff. [*Id.* ¶¶ 16–18.] Nettles then referred the matter for a disciplinary hearing, and after

---

[4] Captain Brightharp is not a named Defendant in this action.

4

a disciplinary hearing on April 20, 2011, Plaintiff was found not guilty of the charge. [*Id.* ¶¶ 19–21.] During the pendency of the charge, Plaintiff experienced and suffered heightened anxiety and depression, fear, confusion, inconvenience, and agitation. [*Id.* ¶ 22.] Plaintiff also alleges the charge and its referral for disciplinary action had a chilling effect upon Plaintiff's exercise of his right of free speech and expression, and Jones, Sheppard, and Nettles were reckless and grossly negligent and retaliated against Plaintiff for exercising his First Amendment right by pursuing the "bogus" disciplinary charge. [*Id.* ¶¶ 22–24.] Additionally, Plaintiff alleges Jones violated SCDC procedures related to the handling of inmate mail, and after Plaintiff was found not guilty of the charge, Jones refused to return Plaintiff's mail or to mail it to his mother. [*Id.* ¶¶ 25–28.] Further, Jones's mishandling of Plaintiff's mail resulted in several SCDC employees being authorized to read Plaintiff's personal correspondence who otherwise would not have been authorized to read Plaintiff's letter. [*Id.* ¶ 29.]

### *Inmate-to-Inmate Mail*

Plaintiff also alleges that Joyce Young ("Young"),[5] the mail room supervisor at McCormick Correctional Institution, intentionally failed to deliver legal mail sent by Plaintiff to a co-plaintiff in a joint legal action, although Plaintiff had authorization to send the mail to his co-plaintiff, in violation of SCDC policy. [*Id.* ¶ 32–37.] Plaintiff alleges Young's conduct was reckless and a grossly negligent exercise of her duty to Plaintiff, as well as an unlawful interference with Plaintiff's First Amendment rights to free speech, expression, and association. [*Id.* ¶¶ 38–39.]

---

[5] Joyce Young is not a named Defendant in this action.

### Legal Mail

On October 10, 2011, Jones refused to accept Plaintiff's legal correspondence for mailing.   [*Id.* ¶¶ 41–42.]  Plaintiff alleges this refusal violated SCDC policy; was reckless, wanton, willful, grossly negligent, and intended to harm Plaintiff; and was an unlawful interference with Plaintiff's exercise of his First Amendment rights.  [*Id.* ¶¶ 43–44.]  Plaintiff alleges SCDC is liable under the South Carolina Tort Claims Act for the acts of its employees, and Jones, Sheppard, and Nettles are liable in their individual capacities for, among other things, "violating Plaintiff's First Amendment right to free speech and expression, and to be free from wrongful interference and unlawful retaliation for the exercise of such right."  [*Id.* ¶¶ 47–50.]

### Relief Sought

Plaintiff seeks a jury trial; actual damages in the amount of $30,000, jointly and severally, from Defendants; punitive and nominal damages from Jones, Sheppard, and Nettles; Plaintiff's costs of suit; and any additional relief the Court deems just and proper. [*Id.* at 19–20.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent

standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at

520–21.  The mandated liberal construction means only that if the court can reasonably

read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the

plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).

Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of

Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of

action for constitutional violations by persons acting under color of state law.  Section 1983

"'is not itself a source of substantive rights,' but merely provides 'a method for vindicating

federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting

*Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a civil action under § 1983

allows "a party who has been deprived of a federal right under the color of state law to seek

relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or
> causes to be subjected, any citizen of the United States or any
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements:

(1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and

laws of the United States;" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A

determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this

standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Motion for Summary Judgment**

As an initial matter, in his response in opposition to the motion for summary judgment, Plaintiff indicates that, after careful consideration, he withdraws the inmate-to-inmate mail claims raised in paragraphs 32–35 and the legal mail claims raised in paragraphs 40–43 of the Complaint. [Doc. 46 at 5.] Accordingly, the only issues remaining before the Court are those related to the 809 charge and the 855 charge.

With respect to these issues, Defendants argue they are entitled to summary judgment because (1) in their official capacities, Defendants are not "persons" for purposes of § 1983[6]; (2) Plaintiff's claims are barred because he alleges only a mental or emotional injury without a showing of physical injury; (3) Plaintiff failed to exhaust administrative remedies with respect to the 809 charge; (4) Defendants did not violate Plaintiff's constitutional rights; and (5) Defendants are entitled to qualified immunity. [Doc. 43-1.] The Court agrees summary judgment should be granted.

### The 809 Charge—Threatening to Inflict Harm on/Assaulting Employee

Plaintiff complains that Jones retaliated against him by bringing a groundless, bogus disciplinary charge as a direct result of Plaintiff's exercise of his First Amendment right to

---

[6]In his response in opposition, Plaintiff clarifies he is bringing this suit against the individual defendants in their individual capacities. [Doc. 46 at 6.] Additionally, Plaintiff clarifies his claims against SCDC are under the South Carolina Tort Claims Act ("SCTCA") and not under § 1983. [*Id.*]

SCDC is entitled to summary judgment under the SCTCA. The SCTCA provides that a governmental entity is liable for loss resulting from the supervision, protection, control, confinement, or custody of a prisoner if conducted in a grossly negligent manner. S.C.Code Ann. § 15–78–60(25). "Gross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do"; thus, gross negligence is the failure to exercise slight care. *Etheredge v. Richland Sch. Dist. One*, 534 S.E.2d 275, 277 (S.C. 2000) (citing *Clyburn v. Sumter Cnty. Dist. Seventeen*, 451 S.E.2d 885 (S.C. 1994); *Richardson v. Hambright*, 374 S.E.2d 296 (S.C. 1988)). Alternatively, gross negligence has been defined as the absence of care that is necessary under the circumstances. *Id.* (citing *Hollins v. Richland Cnty. Sch. Dist. One*, 427 S.E.2d 654 (S.C. 1993)).

Here, Plaintiff has failed to demonstrate SCDC failed to exercise slight care because, as discussed below, Plaintiff has failed to demonstrate that the 809 and 855 charges were anything more than a direct response to Plaintiff's perceived misconduct. Accordingly, SCDC is entitled to summary judgment under the SCTCA.

free speech and expression when he complained about his mail being opened outside his presence. [Doc. 2-1 ¶ 13.]   Defendants contend that (1) Plaintiff failed to exhaust administrative remedies with respect to the 809 charge and (2) with respect to the merits of this claim, (a) threatening SCDC employees is not protected speech; (b) the 809 charge did not affect Plaintiff's constitutionally protected speech; and (c) the 809 charge was not causally related to Booker's protected speech.   [Doc. 43-1 at 16–18.]   The Court agrees Defendants are entitled to summary judgment on this claim.

### Exhaustion of Administrative Remedies

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). As the Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.  In other instances, the internal review might filter out some frivolous claims.  And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,

12

and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes Step 2 of the SCDC grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g., Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006). Hence, within this District, an inmate's claim is barred unless he completes Step 2 of the SCDC grievance procedure with respect to that claim.

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*,

13

407 F.3d 674, 681 (4th Cir. 2005). Further, "[w]hen a prisoner files a grievance and has not received a timely determination, the grievance may be considered exhausted under the PLRA." *Williams v. Loyd*, No. 2:09–2289–JFA–RSC, 2010 WL 3609790, at *4 (D.S.C. Apr. 28, 2010) (listing cases holding that administrative remedies are deemed exhausted when prison officials fail to timely respond to a properly filed grievance), *Report and Recommendation adopted by* 2010 WL 3609512 (D.S.C. Sept. 13, 2010).

Here, Plaintiff filed a Step 1 grievance [Doc. 43-2 at 18–19], which was denied and returned to Plaintiff on September 1, 2011 [*id.* at 20]. Plaintiff then submitted a Step 2 grievance. [*Id.* at 21–22.] Plaintiff's Step 2 grievance is signed and dated by Plaintiff on September 3, 2011, but is marked as received on September 8, 2011. [*Id.*] SCDC policy requires an appeal of a Step 1 grievance to be submitted on a Step 2 form within five calendar days of the receipt of the response to the Step 1 grievance. [*Id.* at 12 § 13.6.] Defendants argue Plaintiff submitted his Step 2 grievance on September 8, 2011, which exceeds the five days allowed for filing a Step 2 grievance; accordingly, the grievance was closed because it was not timely filed. [*Id.* at 3 ¶¶ 21-22.] Plaintiff alleges he placed the grievance in the Lieber grievance box on September 3, 2011. [Doc. 46-1 ¶ 4.] Plaintiff also contends that the Inmate Grievance Coordinators ("IGC") assigned to his grievances have always instructed Plaintiff to submit his grievance forms by depositing them in the institutional grievance box instead of personally delivering them. [*Id.* ¶ 3.] While Defendants question whether the date reflected on the grievance was altered, Defendants do not challenge Plaintiff's position that he was directed to place his grievance in the grievance box rather than provide it directly to the IGC. [Doc. 48 at 3–4.] On record before

14

this Court, the Court is unable determine whether the untimely filing of Plaintiff's Step 2 grievance was wholly due to Plaintiff's actions because there is no evidence contradicting Plaintiff's allegation that he was instructed to place his grievances in the institutional grievance box rather than give it directly to the IGC and there is no evidence that the date on the grievance was changed to create the appearance of a timely filing.  Accordingly, the Court will address the merits of this claim.

### Merits

To establish a First Amendment retaliation claim under § 1983, a plaintiff must show that (1) his speech was protected; (2) the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship exists between the plaintiff's speech and the defendant's retaliatory action.  *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685–86 (4th Cir. 2000).  Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim.  *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).  An inmate must allege facts showing that his exercise of a constitutionally protected right was a substantial factor motivating the retaliatory action.  *See, e.g., Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996); *Hughes v. Bledsoe*, 48 F.3d 1376, 1387 n.11 (4th Cir. 1995).  An inmate must also allege facts showing that he "suffered some adversity in response to [his] exercise of [constitutionally] protected rights."  *Am. Civil Liberties Union of Md., Inc. v. Wicomico Cty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993).  "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights."  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir.

2005).  Further, claims of retaliation by inmates are generally regarded with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."  *Cochran*, 73 F.3d at 1317; *Adams*, 40 F.3d at 74.

Here, even assuming Plaintiff's use of the grievance process by filing a "Request to Staff Member" form was protected speech,[7] Plaintiff, has failed to establish he suffered adverse action as a result of the 809 charge or that Jones's bringing of the 809 charge was anything more than a direct response to Plaintiff's perceived misconduct.  Jones avers she recommended bringing an 809 charge against Plaintiff because of his threats against her, not because Plaintiff filed a grievance against Jones.  [Doc. 43-4 at 2 ¶ 11.]  While Plaintiff was ultimately found not guilty of the 809 charge, the hearing officer avers that the charges against Plaintiff were not frivolous or meritless.  [Doc. 43-5 ¶ 6]; *see Keeler v. Pea*, 782 F.Supp. 42, 45 (D.S.C. 1992) (holding that when "some" evidence exists on which the disciplinary committee could reach a finding of guilty on a charge, the prisoner could not

---

[7]Although the Fourth Circuit has not issued a published opinion on the question of whether the filing of a grievance by a prisoner implicates the First Amendment, other circuits have held that prison officials may not retaliate against a prisoner for filing grievances.  *See, e. g., Hill v. Lapin*, 630 F.3d 468, 472 (6th Cir. 2010) (recognizing a prisoner's "undisputed First Amendment right to file grievances against prison officials on his own behalf"); *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (recognizing filing of grievance as a protected First Amendment right); *Haynes v. Stephenson*, 588 F.3d 1152, 1155–56 (8th Cir. 2009) ("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity."); *Bibbs v. Early*, 541 F.3d 267, 272 (5th Cir. 2008) (holding plaintiff stated a cognizable claim where prison officials allegedly subjected him to sub-freezing temperatures for four consecutive nights in retaliation for filing grievances); *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006) ( "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment."); *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005) (holding plaintiff stated a claim where he alleged prison officials destroyed property, threatened transfer, and assaulted him in retaliation for filing grievance and lawsuit); *Gill v. Pdilypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (holding plaintiff stated a claim where prison officials allegedly issued false misbehavior reports and sentenced him to three weeks in keeplock in retaliation for using grievance system).  Additionally, the Fourth Circuit, in an unpublished opinion, has recognized that a prisoner's claim of transfer in retaliation for filing grievances implicated the First Amendment rights of free speech and to seek redress of grievances. *Gullet v. Wilt*, 869 F.2d 593 (4th Cir. 1989) (unpublished table decision).

complaint of charges being improperly brought simply because he was found not guilty). Accordingly, Defendants are entitled to summary judgment on this claim.[8]

### The 855 Charge—Conspiracy to Smuggle in Contraband

Plaintiff complains that Jones, Sheppard, and Nettles pursued a groundless, bogus disciplinary charge based on Plaintiff's mentioning of a Green Dot card in a letter to his mother and that the pursuit of this charge "had a chilling effect upon [his] exercise of [his] free speech and expression right to including wrongful interference with that right." [Doc. 2-1 ¶ 22.] Defendants contend inmates do not have a constitutional right to mail letters free of inspection by prison authorities. [Doc. 43-1 at 18–20.] The Court agrees Defendants are entitled to summary judgment on this claim.

A prisoner enjoys a First Amendment right to receive and send mail, *see Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989), but prison officials may adopt regulations that impinge on a prisoner's constitutional rights if those regulations are "reasonably related to legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89 (1987). Legitimate penological interests include preserving prison security and maintaining order and discipline. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Moreover, in noting the delicate nature of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh*,

---

[8]To the extent Plaintiff alleges Defendants were reckless or grossly negligent with respect to the 809 charge [Doc. 2-1 ¶ 12], such claims fails. Gross negligence, in general, is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328–36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345–48 (1986); *Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995); *Ruefly v. Landon*, 825 F.2d 792, 793–94 (4th Cir. 1987). Negligence is a cause of action under state law, and § 1983 does not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200–03 (1989).

490 U.S. at 408.  The Fourth Circuit, in *Altizer v. Deeds*, held "the opening and inspecting

of an inmate's outgoing mail is reasonably related to legitimate penological interests, and,

therefore, constitutional . . . ."  191 F.3d 540, 547–48 (4th Cir. 1999).

The letter from Plaintiff to his mother states, in relevant part

> I was told yesterday that you were glad to hear that I have
> started back eating, that you miss me, that you plan to get me
> a $50 green dot on the 1st, and that you want me to call you
> because you want to talk to me.
>
> ***
>
> But listen, I don't want you to get me a $50 green dot on the
> 1st; I want you to hold onto that fifty and get twenty from Tasha
> for me—I want you to hold onto this money for one week, if I
> haven't had anyone call you and tell you what to do with it [] by
> the 8th, then don't worry about it (go ahead and use it) But I
> really want you to have $50 to $70 on standby for me for a
> week—can you please do this?  I trust that you will.
>
> ***
>
> Oh yeah, in that letter you had said Tasha was suppose to be
> getting me a green dot that Tuesday.  Do she got it?  Well,
> anyway I am going to send this [] letter out.  Please write me
> back and please hold that money for me.

[Doc. 43-4 at 28.]  Jones avers she was inspecting Plaintiff's outgoing mail to his mother

pursuant to SCDC policy and, while inspecting the letter, she noticed it referenced a Green

Dot card.  [*Id.* at 2–3 ¶¶ 12–13.]  Green Dot cards are "prepaid cards that serve as a

method of transferring money among inmates and between inmates and the public without

the use of cash" and "present a significant security concern at Leiber and other SCDC

institutions, and mailroom personnel are instructed to be on the lookout for this sort of

contraband."  [*Id.* at 3 ¶¶ 14–15.]  Accordingly, Plaintiff has failed to establish a violation

of his constitutional rights because he does not have a right to mail letters free from

18

inspection and, during an inspection of his outgoing mail, Jones noticed it referenced a Green Dot card, which poses a security concern.[9]  While Plaintiff was ultimately found not guilty of the 855 charge, the hearing officer avers that the charges against Plaintiff were not frivolous or meritless.  [Doc. 43-5 ¶ 10]; *see Keeler* 782 F.Supp. at 45.  Thus, Defendants are entitled to summary judgment on this claim.[10]

### *Qualified Immunity*

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and ... whether that right was clearly established at the time of the alleged violation.'"  *Wilson v.*

---

[9]To the extent Plaintiff alleges the 855 charge was brought against him in retaliation for his "free speech and expression with [his] mother" [Doc. 2-1 ¶ 24], Plaintiff cannot establish that his letter to his mother constitutes protected speech as required to establish a First Amendment retaliation claim.  Moreover, Plaintiff cannot establish he suffered adverse action as a result of the 855 charge or that Jones's bringing of the 855 charge was anything more than a direct response to Plaintiff's perceived misconduct.

[10]To the extent Plaintiff alleges Defendants were reckless or grossly negligent with respect to the 855 charge [Doc. 2-1 ¶ 23], such claims fails because gross negligence is not actionable under 42 U.S.C. § 1983. *See supra* note 9.

19

*Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken ." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

**Motion for Leave to File a Supplemental Complaint**

Plaintiff seeks to file a supplemental complaint because

> 1).     There are occurrences and events involving the SCDC defendant and its employees which have happened since the date of the pleading sought to be supplemented;
>
> 2).     The existing parties will not be unduly prejudiced by the filing of a supplement complaint; and
>
> 3).     Justice require that leave shall be freely granted.

[Doc. 68.]   The Court recommends Plaintiff's motion for leave to file a supplemental complaint be denied for two reasons.  First, the motion to amend is untimely as it was filed over one year after the Complaint and Amended Complaint.  [*See* Docs. 2-1 (Complaint stamped received by Insurance Reserve Fund Claims Department on June 22, 2012); 8-2 (Amended Complaint with certificate of service dated July 19, 2012).]  Second, allowing Plaintiff to amend at this procedural posture would be unduly prejudicial to Defendants, whose motion for summary judgment had been pending for over seven months when Plaintiff sought leave to file a supplemental complaint.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED; Plaintiff's motion to expedite ruling be FOUND AS MOOT; and Plaintiff's motion for leave to file a supplemental complaint be DENIED.

21

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

August 14, 2013
Greenville, South Carolina