IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| PATRICK L. BOOKER, | ) C/A No. 2:12-CV-01957-MGL-MGB |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) REPORT & RECOMMENDATION |
| | ) OF MAGISTRATE JUDGE |
| SOUTH CAROLINA DEPARTMENT OF | ) |
| CORRECTIONS, SYLVIA JONES, ANN | ) |
| SHEPPARD, THIERRY NETTLES, | ) |
| | ) |
| Defendants. | ) |
| | ) |

This is a civil action filed by a *pro se* litigant. Under Local Civil Rule 73.02(B)(2) of the United States District Court for the District of South Carolina, pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge.

Facts

The Plaintiff is an inmate incarcerated by the State of South Carolina at Evans Correctional Institution. The events alleged in his Complaint (Dkt. No. 1-1) took place while he was incarcerated at Lieber Correctional Institution ("LCI"). The Plaintiff alleges the following facts. On November 8, 2010, the Plaintiff mailed a piece of legal mail to the Dorchester County Sheriff's Office that was returned to LCI on November 17, 2010, for failure to affix a mailing address. (Dkt. No. 1-1 ¶1.) The Plaintiff's mail was returned to him later that day and noticed it had a slit opening the entire length of the envelope. (Id. at ¶2.) The Plaintiff forwarded an SCDC 19-11 "Request to Staff Member" form (Dkt. No. 46-3 at 2 of 3.), to the LCI mailroom advising the mailroom he had discovered his mail had been tampered with and his "intent to pursue civil remedies and seek criminal prosecution" if he found his mail tampered with again.

(Dkt. No. 1-1 at ¶3.)  Defendant Jones received the form and submitted an incident report (Dkt. No. 46-3 at 3 of 3) recommending the Plaintiff be charged with an 809[1] offense entitled "Threatening to Inflict Harm on/Assault Employee."  (Dkt. No. 1-1 at ¶4.)  Captain Brightharp was the supervisor charged with reviewing the incident report, and he forwarded the report on to Defendant Thierry Nettles recommending the Plaintiff be charged.  (Id. at ¶5-6.)  Defendant Nettles formally charged the Plaintiff with the 809 disciplinary offense.  (Id. at ¶8.)  At his disciplinary hearing on December 9, 2010, the Plaintiff was found not guilty because the incident report did not support the charge.  (Id. at ¶10.)  During the time the "bogus" 809 charge was pending, the Plaintiff "suffered heightened anxiety and depression, fear, confusion, inconvenience,…was unable to sleep, and…had a diminished appetite."  (Id. at ¶11.)  The "actions and omissions" of Defendants Jones and Nettles "had a chilling effect upon [the Plaintiff's] exercise of free speech and expression."  (Id.)  The Plaintiff alleges he was intentionally charged with the "bogus disciplinary accusation."  (Id. at ¶12.)

Defendant Jones submitted an affidavit to the court.  (Dkt. No. 43-4.)  Attached to her affidavit is a copy of the South Carolina Department of Corrections' ("SCDC") policy regarding inmate mail.  According to the policy, inmate mail, except legal or privileged mail, may be opened at any time if SCDC staff believes it might contain contraband.  (Dkt. No. 43-4 ¶4.)  At

---

[1] An 809 offense is defined as follows:
> Communication, verbal or written, by an inmate to an individual that s/he intends to injure that person or commit a violent or unlawful act dangerous to human life, presently or in the future; or one who commits a physical act of a threatening nature, and the probable result of such threats or action is to place the individual in fear of bodily injury; or one who causes evacuation of a building; or one who creates serious disruption or alarm.  Any unauthorized body contact of an employee or member of the public which creates serious alarm, but does not result in bodily injury.

(Dkt, No. 43-1 at 4 of 26 n. 1.)

the time this incident occurred, all of the Plaintiff's mail was being opened and inspected because he had mailed a food item to a clerk of court's office regarding a lawsuit he had filed.[2] (Id. at ¶5.)  The Plaintiff's legal mail was required to be left open when he mailed it to allow the mailroom to inspect for contraband because of the food incident, but on this occasion the Plaintiff's legal mail was given to the mailroom already sealed.  (Id. at ¶6.)  The letter was opened in the mailroom, inspected, resealed with tape, and then mailed.  (Id. at ¶7.)  The mail was returned for improper or missing address, and was returned to the Plaintiff without any further tampering.  (Id. at ¶9.)  When the Plaintiff saw that the letter had been opened and taped shut, "he became irate, yelling at [Defendant Jones] that he was going to sue [her], file criminal charges against [her], and have [her] fired."  (Id. at ¶10.)  Defendant Jones feared for her safety because of these threats and prior threats made by the Plaintiff.  (Id. at ¶11.)  Based on this fear and the cumulative threats he had made against Defendant Jones, she recommended he be charged with the 809 disciplinary offense. (Id.)  According to the disciplinary hearing officer, the Plaintiff was found not guilty of the 809 charge because the threats made by the Plaintiff were legal, not physical, threats.  (Dkt. No. 43-5 at ¶¶4-5.)

## Procedural History

On June 5, 2012, the Plaintiff filed the Complaint in the McCormick County Court of Common Pleas, Civil Action No. 2012-CP-30-00051, and filed an Amended Complaint, which incorporated the Complaint by reference, on June 20, 2012.  (Dkt. Nos. 1 & 8.)  The Defendants removed the case to federal court on July 13, 2012.  (Dkt. No. 1.) The Defendants answered the Complaint on July 13, 2012 and Amended Complaint on July 23, 2012. (Dkt. Nos. 4 & 9.)

---

[2] The Plaintiff disputes this assertion claiming he did not mail the food item until March 29, 2011, four months after these events are alleged to take place. (Dkt. No. 46 at 2-3 of 29.)

3

On August 13, 2012 the Plaintiff filed a Motion to Remand. (Dkt. No. 19.) On September 6, 2012, the Plaintiff filed a Motion to Amend, requesting he be allowed to delete certain paragraphs of his Complaint. The court granted his motion on September 12, 2012 and ordered his motion be designated as his Second Amended Complaint. (Dkt. Nos. 30 & 31.) On September 12, 2012, Magistrate Judge Austin issued a Report and Recommendation, which the district court adopted, recommending the Plaintiff's Motion to Remand be granted as to paragraphs 30-31 of the Amended Complaint and 1-8 of the Complaint and denied a remand on the remaining claims. (Dkt. Nos. 32 & 40.) The Defendants filed a Motion for Summary Judgment of the remaining federal claims. (Dkt. No. 43.) The district court granted the motion as to the federal claims and remanded the remaining claims to state court on September 23, 2013. (Dkt. No. 77.)

The Plaintiff appealed the district court's order granting summary judgment to the Fourth Circuit on November 12, 2013 (Dkt. No. 92.) The Fourth Circuit vacated the district court's granting of summary judgment on Plaintiff's claim "that Jones retaliated against him for filing a grievance complaining of the opening of his mail.[3]" Booker v. S. Carolina Dep't of Corr., 583 F. App'x 43, 45 (4th Cir. 2014). The Fourth Circuit "affirm[ed] the grant of summary judgment on Booker's remaining federal law claims[4] and vacat[ed] the denial of Booker's Rule 59(e) motion."

---

[3]The Fourth Circuit based its ruling on finding genuine issues of material fact on the second element of the Plaintiff's First Amendment retaliation claim. The Court held that, in viewing the evidence in a light most favorable to the Plaintiff, Defendant "Jones' conduct would likely deter prisoners of ordinary firmness from exercising their First Amendment rights." Booker, 583 F. App'x at 44.

[4]The Plaintiff's additional federal claims included a claim for First Amendment retaliation relating to him being charged with an 855 offense, conspiracy to smuggle contraband. That charge was based on a letter he wrote to his mother being intercepted and read. The letter contained a discussion of green dot cards, a method of transferring money not permitted by

4

Id. Finally, the Fourth Circuit "vacate[d] the district court's order remanding Booker's state law claims and direct reconsideration of whether exercising jurisdiction over those claims is appropriate." Id. Now before this court are the Plaintiff's Motion For Summary Judgement (Dkt. No. 113), filed October 6, 2014, and Defendants' Motion For Summary Judgment (Dkt. No. 131), filed January 2, 2015.

## Applicable Law

The Plaintiff's remaining federal claim is for First Amendment retaliation in violation of 42 U.S.C. § 1983. U.S. Const. amend. I. To establish a claim for First Amendment retaliation, the Plaintiff must show "that (1)[he] engaged in protected First Amendment activity, (2) [Jones] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and [Jones'] conduct." Booker v. S. Carolina Dep't of Corr., 583 F. App'x 43, 44 (4th Cir. 2014) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir.2005)) (alterations in the Booker v. S. Carolina Dep't of Corr.).

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable

---

SCDC. He was found not guilty at his disciplinary hearing. (Dkt. No. 71.)

inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

### Plaintiff's "Motion For Summary Judgement"

The Plaintiff filed a "Motion for Summary Judgement" requesting this court grant summary judgment for his "First Amendment claim that Sylvia Jones violated his right to send correspondence when Jones refused to mail Plaintiff's letter to his mother 'after' he was cleared of the 855 charge." (Dkt. No. 113.) The Plaintiff incorporates by reference his previous "Plaintiff's Motion for Summary Judgement" (Dkt. No. 87.) The Plaintiff's allegations in his motion appear to refer to paragraphs 9-24 of his Complaint. (Dkt. No. 1.) The district court granted the Defendants' Motion for Summary Judgment as to the Plaintiff's claims regarding his 855 charge. (Dkt. No. 77.) The Fourth Circuit affirmed "the grant of summary judgment on Booker's remaining federal law claims." Booker v. S. Carolina Dep't of Corr., 583 F. App'x 43, 45 (4th Cir. 2014). That would include the Plaintiff's claims regarding his 855 charge that are the subject of his motion. This court recommends the Plaintiff's "Motion for Summary Judgement" be ordered moot because the district court has already ruled on the claims and that ruling was upheld by the Fourth Circuit.

### Defendants' Motion for Summary Judgment

The Defendants have filed for summary judgment on the Plaintiff's remaining federal claim for First Amendment retaliation. The Fourth Circuit held that disputes of material fact existed as to whether Defendant Jones' act of recommending the Plaintiff be charged with the 809 charge was an "action [taken] that adversely affected [the Plaintiff's] First Amendment rights." Booker, 583 F. App'x at 44. However, the Fourth Circuit offered "no opinion as to

6

whether Booker has engaged in protected speech or can show the requisite causal connection between that speech and Jones' decision to charge him with the disciplinary infraction, leaving those questions for consideration in the first instance to the district court on remand." Booker, 583 F. App'x at 44-45.  To prevail on summary judgment, the Defendants' must show that there is no genuine issue of material fact on both of the remaining elements of First Amendment retaliation, and that they are entitled to judgment as a matter of law.

In order to establish First Amendment retaliation, the Plaintiff must show his expression was protected speech.  Whether or not an inmate grievance is protected speech has not been ruled on in a published opinion by the Fourth Circuit.  See Gullett v. Wilt, 869 F.2d 593, 1989 WL 14614 at *2 (4th Cir. 1989) (unpublished table decision) (noting that First Amendment rights "are implicated by [the plaintiff's] claim that he is being transferred because prison officials are retaliating for [his] numerous institutional grievances").  Other circuits have held prisoner grievances implicate First Amendment protections.  See Hill v. Lapin, 630 F.3d 468, 472 (6th Cir. 2010) (noting that a prisoner has an "undisputed First Amendment right to file grievances against prison officials on his own behalf"); Haynes v. Stephenson, 588 F.3d 1152, 1155–56 (8th Cir. 2009) ("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity."); Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006) ("First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment."). However, disrespectful and abusive speech directed at prison officials and speech inciting violence or danger in a prison have not been found to be protected. See Scible v. Steward, No. CIVA 1:08CV100, 2010 WL 933857, at *16 (N.D.W. Va. Mar. 11,

2010) (citing Scarpa v. Ponte, 638 F.Supp. 1019, 1028 (D.Mass.1986) (citing Savage v. Snow, 575 F.Supp. 828, 836 (S.D.N.Y.1983)); Goff v. Dailey, 991 F.2d 1437 (8th Cir.1993)).

The Sixth, Seventh and Eighth Circuits have viewed the protections given to prisoner's speech as being similar to the protections public employees have. Dawson v. Toler, No. CIV.A. 2:08-0964, 2009 WL 2526332, at *2 (S.D.W. Va. Aug. 14, 2009) (citing McElroy v. Lopac, 403 F.3d 855, 858 (7th Cir. 2005) ("As in the public-employee context, McElroy's questions concerning Lopac's 'personal policies' about lay-in pay must relate to a public concern and not just a personal matter to receive First Amendment protection."); Thaddeus–X v. Blatter, 175 F.3d 378, 392 (6th Cir. 1999) ("A prisoner's First Amendment rights are not more extensive than those of a government employee; in fact, under most clauses of the First Amendment, they are much more strictly limited."); Cornell v. Woods, 69 F.3d 1383, 1388 (8th Cir.1995) (noting that "[e]ven public employees, who receive only limited First Amendment protections in the employment context, are constitutionally shielded for employer retaliation for their participation in investigations concerning matters of public concern .")).

A public employee's speech is protected when it addresses matters of public concern. White v. Bailey, C/A No. 0:04-CV-23225-CMC-BM, 2006 WL 2038297, at *4 (D.S.C. July 18, 2006). "The government may not retaliate against a public employee who exercises her First Amendment right to speak out on a matter of public concern." Love-Lane v. Martin, 355 F.3d 766, 776 (4th Cir. 2004). "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." Urofsky v. Gilmore, 216 F.3d 401, 406-407 (4th Cir. 2000) "In determining whether an employee's speech constitutes speech on a matter of public concern, we are guided by the content, form, and context of the speech in question."

8

Robinson v. Balog, 160 F.3d 183, 187-88 (4th Cir. 1998) (citing Connick v. Myers, 461 U.S. 138,147-48 (2008); Stroman v. Colleton County Sch. Dist., 981 F.2d 152, 156 (4th Cir. 1993)).

 Relying on the reasoning of other circuits and the Fourth Circuit's case law regarding protected speech of public employees, this court recommends that there is a genuine issue of material fact as to whether the Plaintiff's speech was protected. In viewing the evidence in the light most favorable to the Plaintiff, the speech is a matter of public interest and implicates constitutional concern. The speech in this case was in the form of an "SCDC 19-11 'Request to Staff Member' form." (Dkt. No. 1-1.) It consisted of a warning that the Plaintiff would pursue legal and criminal penalties against Defendant Jones if she opened his legal mail outside his presence. (Id.) The Plaintiff did not communicate any physical threats. Legal mail provides an inmate the ability to challenge his incarceration and the conditions under which he lives. An inmate's ability to voice concerns in a way sanctioned by the prison over conduct of prison employees is a matter of public concern. This was alluded to by the Fourth Circuit in Gullett v. Wilt, 869 F.2d 593, 1989 WL 14614 (4th Cir. 1989). The Seventh Circuit has held that an inmate's oral complaints about prison conditions voiced to prison personnel was protected speech and was sufficient to support a claim of First Amendment retaliation. Pearson v. Welborn, 471 F.3d 732 (7th Cir. 2006). In the case at bar, the Plaintiff's legal threats were on the SCDC form provided by the prison. The complaints about the conduct of SCDC employees are analogous to complaints about prison conditions. The Plaintiff states he "merely advised" that he had discovered his legal mail had been opened and would pursue legal action "if the matter ever occurs again." (Dkt. No. 1-1 ¶3.)

 The court now must examine whether, when viewing the facts in a light most favorable to the Plaintiff, he "can show the requisite causal connection between [the protected] speech and

Jones' decision to charge him with the disciplinary infraction." Booker, 583 F. App'x at 44-45. To show a causal link, the Plaintiff must allege facts showing his protected speech was a substantial factor motivating the retaliatory action. See, e.g., Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996); Hughes v. Bedsole, 48 F.3d 1376, 1387 n. 11 (4th Cir. 1995). Further, claims of retaliation by inmates are generally regarded with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran, 73 F.3d at 1317; Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

The Plaintiff alleges in his Complaint that Defendant Jones "became imbued with animus and retaliatory intent" when she received his Request to Staff Member Form. (Dkt. No. 1-1 ¶4.) The Plaintiff then alleges she issued the incident report recommending he be charged. (Id.) The Plaintiff's allegations are supported by the incident report written by Defendant Jones. (Dkt. No. 46-3 at 3 of 3.) The incident report states as follows:

> On the above date and approximate time: while distributing mail, I Sylvia Jones, received a Request to Staff Member Form from I/M Patrick Booker, SCDC # 294590. Upon reading the request several accusations and allegations were made. These statements were threatening in nature. I/M is being charged with 809-Threatening to inflict harm on/assaulting employee.

(Id.) The incident report is signed and lists the Request to Staff Member as the only evidence. In reading the incident report in a light most favorable to the Plaintiff, Defendant Jones states plainly that she charged the Plaintiff because he submitted the Request to Staff Member. This supports a causal relationship between the Plaintiff's speech and Defendant Jones' actions. Therefore, this court recommends a finding that genuine issues of material fact exist as to both of the questions left open by the Fourth Circuit that the Plaintiff must allege to establish a First Amendment retaliation claim.

The Defendants argue in their memorandum that summary judgment should be granted because they are immune from suit under the doctrine of qualified immunity. "Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hill v. Crum, 727 F.3d 312, 321 (4th Cir. 2013)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects officers from liability for "bad guesses in gray areas" and bases liability on the violation of bright-line rules. Id. (quoting Braun v. Maynard, 652 F.3d 557, 560 (4th Cir. 2011)). To determine whether a defendant is entitled to qualified immunity, the court must examine whether the defendant violated the plaintiff's constitutional or statutory rights and, if so, whether the defendant's "conduct was objectively reasonable in view of the clearly established law at the time of the alleged event." Id.

As discussed *supra*, there are genuine issues of material fact on the Plaintiff's claim of First Amendment retaliation. The court must now examine whether Defendant Jones' "conduct was objectively reasonable in view of the clearly established law at the time of the alleged event." Id. The court "must first identify the specific right that the plaintiff asserts was infringed by the challenged conduct at a high level of particularity." Edwards v. City of Goldsboro, 178 F.3d 231, 250-51 (4th Cir. 1999) (citing Anderson v. Creighton, 483 U.S. 635, 639 (1987); Taylor v. Waters, 81 F.3d 429, 433 (4th Cir.1996)). To be clearly established, "the contours of the right must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." Edwards, 178 F.3d at 251 (quoting Swanson v. Powers, 937 F.2d 965, 969 (4th Cir.1991) (internal quotations omitted)). "In determining whether a right was clearly established at the time of the claimed violation, 'courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the

11

state in which the case arose....'" Edwards, 178 F.3d at 251 (quoting Jean v. Collins, 155 F.3d 701, 709 (4th Cir.1998) (*en banc* )) (alteration in Edwards).  "'[I]f a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense.'" Edwards, 178 F.3d at 251 (quoting Jean v. Collins, 155 F.3d 701, 708 (4th Cir.1998) (*en banc* )) (alteration in Edwards).

In the case at bar, the right asserted by the Plaintiff is that he participated in speech protected by the First Amendment when he submitted his grievance regarding his legal mail. (Dkt. No. 1-1 ¶¶1-13.)  No published case law exists from the Supreme Court of the United States, the Fourth Circuit[5], or the Supreme Court of South Carolina declaring whether or not the Plaintiff's speech in this case is protected by the First Amendment.  While this court recommends the Plaintiff's alleged speech is protected, the recommendation is based on case law from other circuits.  This is not sufficient to clearly establish the right within this jurisdiction. Therefore, this court recommends that Defendant Jones is entitled to summary judgment as a matter of law because she cannot be liable under the doctrine of qualified immunity as she did not violate any of the Plaintiff's clearly established rights.

## Conclusion

Wherefore, it is RECOMMENDED that Plaintiff's "Motion for Summary Judgement" (Dkt. No. 113) be DISMISSED as moot.  It is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 131) be GRANTED.

---

[5] See Plummer v. Riley, No. 2:12-CV-3412-TLW-BHH, 2014 WL 1277903, at *11 (D.S.C. Feb. 26, 2014) Report and Recommendation adopted in part, No. 2:12-CV-03412-TLW, 2014 WL 1277897 (D.S.C. Mar. 27, 2014) ("[T]he Fourth Circuit has not issued a published opinion on the question of whether the filing of a grievance by a prisoner implicates the First Amendment.").

IT IS SO RECOMMENDED.

April 17, 2015

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

*Parties' attention is directed to the information on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).